# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

|  |  |
|---|---|
| In re: | |
| **GOURMET EXPRESS ACQUISITION FUND, LLC,** | Case No.: 15-13670 (NVA) |
| Debtor. | |

* * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| In re: | |
| **GOURMET EXPRESS HOLDINGS, LLC,** | Case No.: 15-13673 (NVA) |
| Debtor. | |

* * * * * * * * * * * * * * * * * * * * *

|  |  |
|---|---|
| In re: | |
| **GOURMET EXPRESS, LLC,** | Case No.: 15-13674 (NVA) |
| Debtor. | |

* * * * * * * * * * * * * * * * * * * * *

## DEBTORS' MOTION FOR ORDER
## DIRECTING JOINT ADMINISTRATION

Gourmet Express Acquisition Fund, LLC ("GEAF"), Gourmet Express Holdings, LLC ("Holdings") and Gourmet Express, LLC ("Gourmet Express," and together with GEAF and Holdings, the "Debtors"), the debtors and debtors-in-possession in the above-captioned cases, by counsel, file this Motion for Order Directing Joint Administration (the "Motion"), and in support thereof state:

**Jurisdiction**

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue lies properly in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157.

2.  The relief sought with this Motion is based upon Section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code") and Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**The Chapter 11 Cases**

3.  On March 16, 2015 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors intend to continue in the possession of their property and the management of their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.  No creditors committee has yet been appointed in these cases by the United States Trustee.

**Background of Debtors and Their Business Operations**

5.  Gourmet Express is the manufacturer of frozen skillet meals sold under the retail name "Gourmet Dining."  It wholesales its frozen skillet meals to numerous retailers throughout the United States, including WalMart, Costco and Aldi's.  Gourmet Express manufactures its products at a 332,465 square foot facility located in Greenville, Kentucky.  A portion of Gourmet Express's back office operations are located in McAllen, Texas.

6.  Gourmet Express was formed under the laws of Texas on December 1, 1997, and previously filed bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas in 2007.  GEAF was incorporated in

Maryland on September 28, 2007 for the purpose of purchasing the equity interests of Gourmet Express out of the prior bankruptcy. Subsequent to GEAF's acquisition of Gourmet Express, GEAF created Holdings, which was incorporated in Maryland on May 11, 2010. Holdings was created for the singular purpose of holding a trademark for a separate line of specialized skillet meals, which was discontinued in 2014. GEAF is the holding company that owns the equity interests of both Gourmet Express and Holdings.

7. Gourmet Express's revenues are derived solely from the sale of their frozen skillet meals. The company has one full time sales manager who manages a food broker network of twenty-four (24) food brokers. The food brokers have direct contact with the customers and market the company's product for sale to the respective customer buyers. It currently has approximately ninety-eight (98) employees on both a part-time and full-time basis.[1]

### Existing Indebtedness and Events Leading to Bankruptcy Filing

8. Gourmet Express has been suffering from a significant reduction in sales coupled with high overhead and significant non-operational costs. During 2014, Gourmet Express's revenues declined significantly, from approximately $61,000,000 in calendar year 2013 to $49,000,000 in 2014. A primary reason for the decrease in revenue is the reduction in sales to Walmart, Wakefern and Aldi's. Further reductions in sales to these customers are forecasted for 2015.

9. In addition to slumping sales, Gourmet Express's rent at its Kentucky facility is well above market for the area, and the facility has significantly more square footage than needed. Continuing operations at this location is not sustainable at the current rent level. The combination of high overhead costs and not generating sufficient gross profits to pay such high overhead costs

---

[1] Nine (9) of the employees are salaried, and the remaining eighty-nine (89) are hourly.

has caused significant cash flow problems.

10. Non-operational obligations are also causing a significant drain on Gourmet Express's cash flow, including settlements and a judgment from various lawsuits. These settlements and judgment not only have a negative impact on Gourmet Express's cash flow and balance sheet, they have significantly hurt Gourmet Express's ability to seek the proper level of financing necessary to sustain operations.

11. Gourmet Express currently funds its operations through a lending facility with Siena Lending Group, LLC ("Siena"). Siena controls all accounts receivable of Gourmet Express's operations, and lends to fund payroll and operation costs based on receivables and the funding needs of Gourmet Express. Gourmet Express is currently burdened by significant debt of over $37,000,000, including prepetition secured debt to Siena in the approximate amount of $1,400,000, and has incurred net losses over the last four years cumulating to over $23,000,000. Secured debt to other secured creditors as of the Petition Date is in excess of $18,000,000. The Debtors estimate their current assets at a value of between approximately $3,500,000 and $8,500,000.

12. As a result of the deteriorating financial and operating conditions prior to the Petition Date, the Debtors engaged Traxi, LLC ("Traxi") to assess and advise on restructuring options. The Debtors ultimately determined that a sale of the Gourmet Express business as a going concern would yield the best result and be in the best interests of creditors and other parties-in-interest. The Debtors have also engaged Traxi to market and sell the assets of Gourmet Express. The Debtors have determined that a structured sale process with defined milestones under the protections of Chapter 11 would be the quickest and most efficient way to effectuate a sale of substantially all of Gourmet Express' assets in a manner that will maximize proceeds to benefit creditors. The Debtors anticipate that they will be filing appropriate motions seeking approval of

4

bidding procedures and ultimately the sale of Gourmet Express's assets under Section 363 of the Bankruptcy Code in the early stages of these bankruptcy cases.[2]

### Request for Joint Administration

13. By this Motion, the Debtors request entry of an order directing the joint administration of these cases under Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 1015(b), which authorize entry of an order for the joint administration of the estates of a debtor and its affiliates. As set forth above, Holdings and Gourmet Express are wholly-owned subsidiaries of GEAF. Accordingly, the Debtors are "affiliates" as that term is defined in Section 101(2) of the Bankruptcy Code, and each of the Debtors' estates is eligible for joint administration.

14. The Debtors respectfully submit that joint administration of these cases would be practical, expedient, less costly and less time-consuming for the Debtors, the Court and all parties-in-interest. The Debtors envision that most, if not all, of the motions, applications, hearings and orders in these cases will affect each of the Debtors. Consequently, joint administration would facilitate the economic administration of these cases.

15. For these reasons, the Debtors respectfully request entry of an order providing for the joint administration of the Debtors' cases under Bankruptcy Rule 1015(b).

16. The Debtors believe that no party-in-interest would be prejudiced by the granting of the relief requested herein. No substantive rights of any party-in-interest will be affected, as these cases will be jointly administered for procedural purposes only.

17. The Debtors request that the Clerk of the Court maintain one docket for all of the Debtors' jointly administered cases, for procedural purposes only, under the Gourmet Express

---

[2] The Debtors are currently in discussions with a potential stalking horse bidder.

Acquisition Fund, LLC case, Case No. 15-13670, and that the Court administer these cases under the following consolidated caption:

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| **In re:** | * | |
| **GOURMET EXPRESS ACQUISITION FUND, LLC,** *et al.*, | * | Case Nos: 15-13670, 15-13673, and 15-13674 |
| | * | |
| Debtors. | | Chapter 11 |
| | * | |
| | | Jointly Administered under |
| | * | Case No: 15-13670 |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**Notice**

18.   Notice of this Motion has been provided to the following parties, or in lieu thereof, to their counsel, if known: (i) the United States Trustee for the District of Maryland (Baltimore Division); (ii) the largest twenty (20) unsecured creditors of the Debtors; (iii) counsel to any known secured creditors of record; (iv) counsel to the Debtors' post-petition lenders; and (v) persons who have filed a request for notice pursuant to Bankruptcy Rule 2002 and such other government agencies to the extent required by the applicable rules.  The Debtors submit that no other or further notice need be provided.

**First Day Affidavit**

19.   In addition to the foregoing, the Debtors rely on, and incorporate as if fully set forth herein, the affidavit of Robert J. Iommazzo, in support of various motions filed at the initial stages of these cases.

**Local Rule 9013-2 Statement**

20. Pursuant to Local Rule 9013-2, the Debtors will not be filing a separate memorandum with respect to this Motion, but rely solely upon the grounds and authorities set forth in the Motion.

WHEREFORE, the Debtors respectfully request that the Court: (i) grant this Motion; (ii) entered the attached proposed Order; and (iii) grant the Debtors such other and further relief as this Court deems appropriate.

Dated:  March 16, 2015                           WHITEFORD TAYLOR & PRESTON, LLP

/s/ *Dennis J. Shaffer*
Paul M. Nussbaum (Bar No. 04394)
John F. Carlton (Bar No. 06591)
Dennis J. Shaffer (Bar No. 25680)
Seven Saint Paul Street, 15th Floor
Baltimore, Maryland 21202-1636
(410) 347-8700
pnussbaum@wtplaw.com
jcarlton@wtplaw.com
dshaffer@wtplaw.com

*Proposed Counsel for the Debtors*

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was served in the manner and on the date indicated, and to the parties identified, in the *Omnibus Certificate of Service* related hereto. In order to expedite the copying and transmittal of papers filed to parties in interest, a copy of the *Omnibus Certificate of Service* has not been transmitted with the foregoing. Any party seeking a copy of the *Omnibus Certificate of Service* may contact the undersigned or may review the *Omnibus Certificate of Service* via PACER.

/s/ *Alan C. Lazerow*
Alan C. Lazerow

*2130949*