# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| **In re:** * | |
| | |
| **GOURMET EXPRESS ACQUISITION** * | **Case Nos: 15-13670(NVA), 15-13673(NVA),** |
| **FUND, LLC,** *et al.*, | **and 15-13674(NVA)** |
| * | |
| **Debtors.** | **Chapter 11** |
| * | |
| | **Jointly Administered under** |
| * | **Case No: 15-13670 (NVA)** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**ORDER (1) APPROVING BID AND SALE PROCEDURES, (2) AUTHORIZING
THE DEBTORS TO PROVIDE CERTAIN BID PROTECTIONS WITHOUT
FURTHER ORDER OF THE COURT, (3) APPROVING ASSUMPTION,
ASSIGNMENT AND SALE PROCEDURES AND RELATED NOTICES,
(4) APPROVING BREAK-UP FEE AND EXPENSE REIMBURSEMENT,
(5) SCHEDULING THE SALE HEARING, AND (6) GRANTING RELATED RELIEF**

The Court having considered the *Debtors' Motion for Orders (i) Approving Sale of Substantially all of the Debtors' Assets to Genesis Merchant Partners, LP and Genesis Merchant Partners II, LP, or Such Other Winning Bidder, Free and Clear of all Liens, Claims and Encumbrances; (ii) Approving Bidding Procedures and Break-Up Fee in Connection with Such Sale; (iii) Approving Assumption and Assignment of Certain Executory Contracts, and Related Procedures; (iv) Scheduling Hearings and Prescribing the Form and Manner of Notice; and (v)*

*Granting Related Relief* (the "Motion")[1] filed by Gourmet Express, LLC and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), any responsive pleadings filed in connection with the Motion, the record in the above-captioned cases, and the representations of counsel at the hearing on the Motion (the "Hearing"); and the Court having determined that notice of the Motion was adequate and sufficient; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157(a) and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(1)(A), (M), (N), and (O).  The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105, 363, 364, 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9008, 9014 and 9019.  Venue of these cases and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The relief granted herein is in the best interests of the Debtors, their estates, their stakeholders, and other parties in interest.

C.      The notice of the Motion and the Hearing given by the Debtors constitutes due and sufficient notice thereof.

D.      The Debtors have articulated good and sufficient reasons for the Court to (i) approve the dates, deadlines and procedures set forth herein (the "Bid Procedures") in respect of the sale of substantially all of the Debtors' assets (the "Sale Transaction"), (ii) authorize the Debtors to provide certain bid protections without further order the Court, (iii) approve the form and manner of notice of the Motion, the Auction, the Sale Hearing, and the assumption,

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Motion or Asset Purchase Agreement (as defined below).

assignment and sale of certain of the Debtors' contracts and leases, and (iv) set the date of the Auction and the Sale Hearing.

E.       Pursuant to the Asset Purchase Agreement (as defined below), the Stalking Horse Bidder (as defined below) is entitled to a Fee of $325,000 (the "Break-Up Fee") and the reimbursement of its Fees and Expenses up to an aggregate amount of $125,000 (including expenses of counsel, accountants and financial advisors) (the "Expense Reimbursement") if the Debtors terminate the Asset Purchase Agreement (in accordance with the terms or the Stalking Horse Agreement) for any reason other than the Stalking Horse Bidder being in breach of the Asset Purchase Agreement.  The Break-Up Fee and the Expense reimbursement are: (i) an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code; (ii) reasonable and appropriate in light of (a) the substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder, (b) the size and nature of the Sale Transaction, and (c) the efforts that have and will be expended by the Stalking Horse Bidder in pursuit of the Sale Transaction; and (iii) necessary to induce the Stalking Horse Bidder to execute the Asset Purchase Agreement, and to pursue the Sale Transaction.

F.       The Break-Up Fee and the Expense Reimbursement are reasonable and appropriate and represent the best method for maximizing the value to the Debtors' estates.  The Break-Up Fee and the Expense Reimbursement induced the Stalking Horse Bidder to execute the Asset Purchase Agreement, and to pursue the Sale Transaction, which has established the minimum bid on which the Debtors and their creditors may rely.  The Stalking Horse Bidder has thus incurred, and continues to incur, expenses in connection with its efforts in connection with the acquisition of the Debtors' assets, the Sale Transaction and the Asset Purchase Agreement.

The efforts of the Stalking Horse Bidder and the Asset Purchase Agreement provided a material benefit to the Debtors and their creditors by increasing the likelihood that the best possible price will be received in connection with the Sale Transaction.

G.    The Bid Procedures are reasonable and appropriate and represent a fair and appropriate method for maximizing the realizable value of the Debtors' assets.

**THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion is GRANTED.

2.    Any objections filed in response to the Motion and the relief granted herein, to the extent not resolved as set forth herein or at the Hearing, are hereby overruled.

3.    The Debtors, in consultation with their professionals, shall contact parties the Debtors reasonably believe may potentially be willing, qualified and financially able to consummate a Sale Transaction.  The Debtors may distribute an information package to any such parties with materials the Debtors deem appropriate under the circumstances including, but not limited to, preliminary "teaser" information.

4.    Upon execution of a non-disclosure agreement in favor of the Debtors by any person identified by the Debtors, with the assistance of their financial advisors, as reasonably likely to be a Qualified Bidder (as defined below) that wishes to conduct due diligence on the Debtors or their assets with respect to a potential bid may be granted access to due diligence information.  For any person who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold or limit any diligence materials that the Debtors, in their discretion after consultation with the First Lien Lender, and the Second Lien Lender, determine are business-sensitive or otherwise not appropriate for disclosure to such person.

5.      The Debtors have selected a stalking horse bidder ("Stalking Horse Bidder"), after consultation with the Secured Lenders (as defined below), and have filed with the Court a copy of the asset purchase agreement with the Stalking Horse Bidder (the "Asset Purchase Agreement").

6.      Any prospective bidder, other than the Stalking Horse Bidder if selected (each a "Potential Bidder"), that wishes to participate in the bidding process for the Debtors' assets must, no later than May 18, 2015 at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline"):

a.      Submit to (i) the Debtors, (ii) the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"), (iii) the Stalking Horse Bidder, (iv) the First Lien Lender and (v) the Second Lien Lender, through their respective counsel, an offer in the form of an executed asset purchase agreement (including all exhibits and schedules thereto) (the "Modified Agreement") without financing or due diligence contingencies (unless consented to by the First Lien Lender, the Second Lien Lender and the Third Lien Lender) at a price that conforms with the following Paragraph 6.b (if the offer is for substantially all of the Debtors' assets), and on such other terms that are no less favorable to the Debtors, taken as a whole, than those contained in the Asset Purchase Agreement.  Such bid must be irrevocable through the Sale Hearing, unless the bid is selected as the Winning Bid or the Back-Up Bid (as such terms are defined below) at the Sale Hearing, in which case the bid shall be irrevocable through the closing of the Sale Transaction.  The Potential Bidder shall also submit a "blacklined" or otherwise marked copy of the Modified Agreement reflecting the differences between the Modified Agreement and the Asset Purchase Agreement.

b.      Agree in such Modified Agreement, if its bid is for substantially all of the Debtors' assets, to provide consideration in an amount equal to or greater than: (i) the Purchase

Price (as defined in the Asset Purchase Agreement); (ii) the Assumed Liabilities (as defined in the Asset Purchase Agreement); (iii) the Break-Up Fee and the Expense Reimbursement; and (iv) $100,000. Such Modified Agreement may not restructure or assume the First Lien Obligations without the consent of the First Lien Lender, or the Second Lien Obligations without the consent of the Second Lien Lender or the Third Lien Obligations without the consent of the Third Lien Lender (the Third Lien Lender, the First Lien Lender and the Second Lien Lender, collectively, the "Secured Lenders").

        c.     Make a good faith cash deposit in the form of a cashier's check or wire transfer, in an amount not less than 20% of the purchase price set forth in the Modified Agreement (the "Bid Deposit") into a segregated, interest bearing escrow account (the "Segregated Account") that shall be opened by the Debtors for this purpose. The Bid Deposit shall immediately become non-refundable (subject to the next sentence) and credited toward the purchase consideration, if and when the transaction with the Potential Bidder approved by the Court (the "Winning Bid" and the "Winning Bidder") is consummated. If a Potential Bidder's bid is not designated as a Qualified Bid (as defined below), or such bid is not approved as the Winning Bid or the Back-Up Bid at the Sale Hearing, the Bid Deposit of such bidder, plus accrued interest, if any, will be returned to such bidder within ten (10) business days after the conclusion of the Sale Hearing.

        d.     Provide written evidence reasonably satisfactory to the Debtors, the Committee, the First Lien Lender and the Second Lien Lender of (A) its financial ability to (i) fully and timely perform all obligations under the Modified Agreement if it is declared to be the Winning Bidder, and (ii) provide adequate assurance of future performance under all contracts and leases to be assigned to it, (B) its qualification to own the assets and operate the businesses

that are the subject of the Modified Agreement in compliance with all federal, state and local laws, and (C) its corporate authority to enter into and consummate the Sale Transaction.

       e.     Disclose any connections or agreements with the Debtors, the Stalking Horse Bidder, any other known Potential Bidder or Qualified Bidder (as defined below), and/or any officer, director or direct or indirect equity security holder of the Debtors.

       f.     Waive the right to assert or seek payment of any claim, including an administrative expense claims or substantial contribution claim under section 503 of the Bankruptcy Code, with respect to its bid or the marketing or auction process, in its capacity as a bidder.

       7.     If a Potential Bidder delivers all of the materials, deposits, disclosures and waivers described in paragraph 6, above, (including the Bid Deposit) by the Bid Deadline, the Debtors, in reasonable consultation with the Committee and the Secured Lenders, will determine whether (i) the Potential Bidder has demonstrated the financial ability to consummate the proposed purchase of the Debtors' assets, (ii) is reasonably likely to be able to and willing to consummate the contemplated transactions and (iii) has otherwise satisfied all of the requirements described in paragraph 6, above.  If so, the Debtors shall designate the Potential Bidder as a "Qualified Bidder" and such bid as a "Qualified Bid," provided, that the Debtors' designation of a bid as a Qualified Bid shall not be deemed a determination that such bid is the highest and/or best bid for the Debtors' assets.  For the avoidance of doubt, any bid that does not provide for the payment of the following amounts in full in cash at closing shall not be deemed a Qualified Bid: (a) to the First Lien Lender, the amount of the Debtors' obligations under the First Lien Credit Agreement, (b) to the Second Lien Lender, the amount of the Debtors' obligations under the Second Lien Credit Agreement, (c) to the Stalking Horse Bidder, for the amount of the

Debtors' obligations under the Third Lien Credit Agreement that are being credit bid pursuant to Section 363(k) of the Bankruptcy Code pursuant to the Stalking Horse Agreement, (d) any cash contemplated to be paid pursuant to the Stalking Horse Agreement, (e) the amount of the Break-Up Fee and the Expense Reimbursement, and (f) an additional $100,000.  The Debtors shall promptly notify the Stalking Horse Bidder and the Secured Lenders of the identity of all Qualified Bidders.  Notwithstanding anything to the contrary contained herein, (y) the Stalking Horse Bidder shall be deemed to be a Qualified Bidder and the Stalking Horse Bid shall be deemed a Qualified Bid and (z) the First Lien Lender and the Second Lien Lender shall be deemed Qualified Bidders and any bids submitted by any of them shall be deemed Qualified Bids, as long as any such bid is submitted by not less than two (2) days before the Auction.

8.      If the Debtors receive more than one (1) Qualified Bid from a Qualified Bidder (including the Stalking Horse Bidder, if any) prior to the Bid Deadline, then the Debtors shall notify the Secured Lenders, the Stalking Horse Bidder (if any) and each other Qualified Bidder that the Debtors intend to conduct an auction (the "Auction"), subject to reasonable rules and regulations as may be established by the Debtors, consistent with this Order and in reasonable consultation with the Committee, and the Secured Lenders.  The Auction to determine the Winning Bidder and the Back-Up Bidder for the Debtors' assets shall be held on May 20, 2015 at 10:00 a.m. (prevailing Eastern Time) at the offices of counsel for the Debtors, Whiteford, Taylor & Preston, 7 St. Paul Street, Suite 1900, Baltimore, Maryland, 21202.  Each bidder participating at the Auction will be required to confirm that (a) it has not engaged in any collusion with respect to the bidding or the sale, and (b) its Qualified Bid does not contain any financing or due diligence contingencies (unless consented to by the First Lien Lender and the Second Lien Lender).  The Auction will be conducted openly, will be transcribed, and the

Committee, the Secured Lenders, any Qualified Bidders, and each of their respective advisors, will be permitted to attend. The Debtors shall file a notice announcing the results of the Auction and the identity of the proposed Winning Bidder and the Back-Up Bidder on the Court's docket as soon as practicable after conclusion of the Auction.

9.      Only the Stalking Horse Bidder and other Qualified Bidders may bid at the Auction. Copies of all Qualified Bids shall be provided to the Committee, the Secured Lenders, the Stalking Horse Bidder and each other Qualified Bidder by May 19, 2015 at 5:00 p.m. (prevailing Eastern Time). At the commencement of the Auction, the Debtors shall identify the bid that they have determined (after consultation with the Secured Lenders and the Committee) to be the highest and/or best offer as of such time, and shall permit the Stalking Horse Bidder and other Qualified Bidders to submit higher and/or better bids. Each subsequent bid must exceed the amount of the preceding bid by not less than $100,000 and shall not be modified in a manner that causes it no longer to be a Qualified Bid. The First Lien Lender and the Second Lien Lender each reserve the right to make a credit bid (pursuant to section 363(k) of the Bankruptcy Code or other applicable law) at the Auction. Notwithstanding anything to the contrary contained herein, any bid (including a credit bid) submitted by the First Lien Lender or the Second Lien Lender shall be deemed a Qualified Bid, as long as such bid is submitted not less than two (2) days before the Auction.

10.     The Debtors, subject to the terms of this Order and the oversight and approval of the Court, and in reasonable consultation with the Committee and the Secured Lenders, shall supervise the bidding process and conduct the Auction in a manner consistent with these Bid Procedures to provide the Stalking Horse Bidder and other Qualified Bidders a full, fair and equal opportunity to participate in the Auction. The Debtors may conduct the Auction in the

manner they determine will result in the highest, best, or otherwise financially superior offer for the Debtors' assets and may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with this Order or, if applicable, the Asset Purchase Agreement.  The Debtors reserve the right, in their reasonable business judgment, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtors and individual bidders; allow individual bidders to consider how they wish to proceed; and give individual bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment may require, that the individual bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments for such individual bidder's proposed transaction.  The Debtors, in consultation with their financial advisors, their counsel, the Secured Lenders, and the Committee, shall determine which Qualified Bid or combination of Qualified Bids is to be recommended to the Court for approval as the highest and/or best bid(s).  The Debtors shall request at the Sale Hearing that the Court authorize the Debtors to consummate the Sale Transaction to such proposed Winning Bidder.

11.    If the Debtors do not receive more than one (1) Qualified Bid (inclusive of the Stalking Horse Bidder), then no Auction shall be scheduled or conducted, and the Court at the Sale Hearing shall solely consider the approval of the Sale Transaction to the Stalking Horse Bidder; the Court shall not consider any competing or alternative offers or proposals to purchase the Debtors' assets subject to such Qualified Bid, nor shall the Court consider any objections to the Motion that are based on the existence or potential for other or different offers or proposals to purchase such assets.

12.     No bidder shall be entitled to any expense reimbursement or break-up fee of any kind with respect to its bid.

13.     The Court shall hold a hearing on the date and at the time set forth on the first page of this Order (prevailing Eastern Time) (the "Sale Hearing") to consider the approval of the Sale Transaction as set forth in the Motion, approve the Winning Bidder, approve the Back-Up Bidder, if necessary, and confirm the results of the Auction, if applicable.

14.     The Bid Deposit of a Winning Bidder other than the Stalking Horse Bidder shall be forfeited if the Modified Agreement of such Winning Bidder is thereafter terminated by Seller as a result of a breach by the Winning Bidder of its obligations thereunder.  The Bid Deposit of the Back-Up Bidder (other than the Stalking Horse Bidder) shall remain on deposit in the Segregated Account pending the Closing Date (as defined below), and such deposit shall be forfeited if the Back-Up Bidder becomes the Winning Bidder and its Modified Agreement is thereafter terminated by Seller as a result of a breach by such Back-Up Bidder.  In either case, the forfeiture of the Bid Deposit shall be in addition to any other rights, claims and remedies that the Debtors and their bankruptcy estates may have against such Winning Bidder and/or Back-Up Bidder, as applicable (unless otherwise provided in such Winning Bid).  If a dispute arises over whether a Bid Deposit is refundable or non-refundable, the Bid Deposit shall remain in the Segregated Account pending a determination of the dispute by the Court or written agreement of the parties.

15.     If Qualified Bids have been submitted by more than one Qualified Bidder, the Qualified Bidder that makes the next-highest and/or best Qualified Bid to that of the proposed Winning Bidder at the conclusion of the Auction shall become the back-up bidder (the "Back-Up Bidder") and such Back-Up Bidder's final and highest and/or best Qualified Bid (the "Back-Up

Bid") shall remain open and irrevocable pending the closing of the Winning Bid (the "Closing Date"). If a bid of the Stalking Horse Bidder is the next-highest and/or best bid to that of the proposed Winning Bidder, then such bid of the Stalking Horse Bidder shall be the Back-Up Bid. If the transaction with the Winning Bidder does not close prior to the Closing Date (as such date may be extended pursuant to paragraph 18, below), the Back-Up Bid, as selected by the Debtors at the Auction and approved as the Back-Up Bid by the Court at the Sale Hearing, shall upon notice to the Back-Up Bidder by the Debtors (after consultation with the Secured Lenders and the Committee), be deemed the Winning Bid without further order of the Court, and the Back-Up Bidder shall be required to consummate the transaction in accordance with the Asset Purchase Agreement or Modified Agreement, as applicable.

16.     Objections to the Sale Transaction, if any, shall be in writing and shall be filed and served so as to be actually received by the Court and the following parties (the "Objection Recipients") (a) counsel for the Debtors, Whiteford, Taylor & Preston L.L.P., 7 Saint Paul Street, Suite 1800, Baltimore, Maryland 21202-1626; Attn: John Carlton, Esq., fax: (410) 223-3732; (b) counsel for Frozen Foods LLC and Genesis Merchant Partners, LP and Genesis Merchant Partners II, LP, Reed Smith, LLP, 1201 Market Street, Suite 1500, Wilmington, Delaware 19801; Attn: Kurt F. Gwynne, Esq., and Richard A. Robinson, Esq., fax (302) 778-7575; (c) counsel for Siena, Otterbourg, Steindler, Houston & Rosen, P.C., 230 Park Avenue, New York, New York 10169-0075; Attn: Jonathan N. Helfat, Esq., fax: (212) 682-6104; (d) counsel to the Official Committee of Unsecured Creditors; Lowenstein Sandler LLP, 65 Livingston Avenue, Roseland, NJ 07068; Attn: Jeffrey D. Prol, Esq. and David Banker, Esq., fax (973) 597-2491; and (e) the U.S. Trustee, 101 W. Lombard St., Suite 2625, Baltimore, MD 21201; Attn: Edmund A. Goldberg, Esq.; **on or before the date and time set forth on the first page of this Order**

**(prevailing Eastern Time)**, <u>provided</u>, <u>however</u>, that if the proposed Winning Bidder at the Auction is an entity other than the Stalking Horse Bidder, any supplemental or further objections to the sale to the proposed Winning Bidder solely with respect to such proposed Winning Bidder's adequate assurance of future performance under any purchased contracts and leases shall be filed by no later than one (1) day prior to the Sale Hearing (the "<u>Objection Deadlines</u>").

17.    Notice of (a) the Motion, (b) the Bid Procedures, (c) the Auction, (d) the Objection Deadlines, (e) the Sale Hearing, and (f) the proposed assumption, assignment and sale of the Contracts to the Stalking Horse Bidder or to any other Winning Bidder shall be good and sufficient, and no other or further notice shall be required, if given as follows:

a.    <u>Notice of Sale, Auction and Sale Hearing</u>: Within three (3) business days after entry of this Order, the Debtors (or their agents) shall: provide notice, in substantially the form attached hereto as <u>Exhibit B</u> (the "<u>Sale Notice</u>"), of this Order, the Motion, the Auction, the Objection Deadlines, and the Sale Hearing by first-class mail upon (a) all Persons known by the Debtors to have expressed an interest to the Debtors in a transaction with respect to the Debtors' assets or a portion thereof during the past six (6) months; (b) all Persons known by the Debtors to have asserted any Lien or interest in the Debtors' assets; (c) all Persons known by the Debtors to be counterparties to Contracts; (d) the U.S. Trustee; (e) the Committee and its counsel; (f) any Governmental Body known to have a claim in the Bankruptcy Cases; (g) all other known creditors and equity security holders of the Debtors; (h) all Persons that have requested special notice in the Bankruptcy Cases; and (i) all other Persons as directed by the Court; and

b.    <u>Assumption, Assignment, Sale and Cure Notice</u>.

i.    No later than five (5) days after the entry of the Sale Procedures Order, the Debtors shall file with the Court and serve via first class mail on all Persons known by the Debtors to be a counterparty to a Contract, a notice of assumption, assignment, sale and cure substantially in the form attached hereto as

Exhibit C (the "<u>Notice of Assumption, Assignment and Sale</u>").  The Notice of Assumption, Assignment and Sale shall include (a) a statement that the Contracts listed therein may be treated as "Purchased Contracts" under the Asset Purchase Agreement (or Asset Purchase Agreement or Modified Agreement) by their inclusion on Schedule 1.1(c) to the Asset Purchase Agreement (or a corresponding schedule in the Asset Purchase Agreement or Modified Agreement), (b) a statement that certain of the Contracts listed therein may be designated as "Designation Right Assets" under the Asset Purchase Agreement (or Asset Purchase Agreement or Modified Agreement) and thereafter rejected or assumed, assigned and sold at a date subsequent to the Closing Date, and (c) the Debtors' calculation of the amount necessary, if any, to cure any and all defaults under the Contracts and compensate the counterparties thereto for pecuniary loss in respect of any such default(s) (the "<u>Cure Amount</u>") as a condition to assumption, assignment and sale of such Contract under Bankruptcy Code sections 363 and 365(b).

ii.     Any subsequent Notice of Assumption, Assignment and Sale that identifies a Contract that was not previously identified as being subject to assumption, assignment and sale under the Asset Purchase Agreement (or Asset Purchase Agreement or Modified Agreement) or that reduces the Debtors' calculation of the Cure Amount (an "<u>Amended Notice of Assumption, Assignment and Sale</u>") shall provide a deadline of not less than seven (7) days from the date of service of such Amended Notice of Assumption, Assignment and Sale by which the counterparty to any modification may object to (a) the assumption, assignment and sale of such Contract pursuant to the Asset Purchase Agreement (or Stalking Horse Agreement or Modified Agreement); (b) the Debtors' calculation of the Cure Amount for such Contract; and (c) adequate assurance of performance, if such Contract was not previously identified as being subject to assumption, assignment and sale.

iii.     The Debtors reserve the right to (i) provide Amended Notices of Assumption, Assignment and Sale up to the Closing of the Asset Purchase Agreement (or Stalking Horse Agreement or Modified Agreement); (ii) remove a Contract from the list of Purchased Contracts at any time prior to the Closing of such agreement, for any reason; and (iii) to remove a Contract from the list of Purchased Contracts after the closing of the Asset Purchase Agreement (or Stalking Horse Agreement or Modified Agreement), if the Court determines after such Closing that the Cure Amount for such Contract is in excess of the amount set forth on <u>Exhibit 1</u> to the Notice of Assumption, Assignment and Sale.  The removal of any such Contract shall not reduce the purchase price to be paid by the Winning Bidder.  In addition, one or more of the Contracts listed on <u>Exhibit 1</u> to the Notice of Assumption, Assignment and Sale may be designated as a Designation Right Asset at the Closing of the asset purchase agreement submitted by the Winning Bidder (including the Stalking Horse Bidder) and in such case may be assumed by the Debtors and assigned and sold to the designated Person, if it makes a written election to accept an assignment of such Contract within the

time frame provided in the Winning Bidder's (including the Stalking Horse Bidder's) asset purchase agreement.

iv.     Any counterparty to a Contract shall file and serve on the Objection Recipients any objections to (a) the proposed assumption, assignment and sale of its Contract to the Winning Bidder (and must state in its objection, with specificity, the legal and factual basis of its objection) and (b) if applicable, the proposed Cure Amount (and must state in its objection, with specificity, what Cure Amount is required with appropriate documentation in support thereof), **no later than the deadline to object to the Sale Transaction set forth on the first page of this Order (prevailing Eastern Time)**; provided, however, that to the extent the Winning Bidder is an entity other than the Stalking Horse Bidder, any supplemental or further objections to the assumption, assignment and sale of a Contract to the Winning Bidder by a counterparty to such Contract, based solely on the Winning Bidder(s)' and/or Backup Bidder(s)' adequate assurance of future performance under any such Purchased Contract shall be filed no later than one (1) day prior the Sale Hearing.  If no objection is timely filed and served, (x) the counterparty to a Contract shall be deemed to have irrevocably consented to the assumption, assignment and sale of the Contract to the Winning Bidder and shall be forever barred from asserting any objection with regard to such assumption, assignment and sale, and (y) the Cure Amount set forth in the Notice of Assumption, Assignment and Sale (or Amended Notice of Assumption, Assignment and Sale) shall be controlling, notwithstanding anything to the contrary in any Contract, any other document or applicable law, and the counterparty to the Contract shall be deemed to have irrevocably consented to the Cure Amount and shall be forever barred from asserting any other claims related to such Contract against the Debtors or the Winning Bidder, or the property of any of them.

v.     If the Winning Bidder or the Back-Up Bidder at the Auction is not the Stalking Horse Bidder (or there is no Stalking Horse Bidder), then within one (1) day after the Auction, the Debtors shall file and serve on each counterparty to the Contracts, a supplemental Notice of Assumption, Assignment and Sale identifying the Winning Bidder and Back-Up Bidder (if applicable) and providing information regarding the Winning Bidder's and Back-Up Bidder's (if applicable) adequate assurance.

18.     A list of all Contracts assumed, assigned and sold to the Winning Bidder as "Purchased Contracts" under the Asset Purchase Agreement (or Asset Purchase Agreement or Modified Agreement) as of the Closing of such agreement shall be filed with the Court no later than five (5) business days following the Closing of such agreement.  In addition, a list of all

Designation Rights Assets sold to the Winning Bidder shall be filed with the Court no later than five (5) business days following the expiration of the Designation Rights Period.

19.    The Break-Up Fee and the Expense Reimbursement are approved and the Debtors are authorized, without further action or order of this Court, to pay the Break-Up Fee and the Expense Reimbursement in accordance with the Asset Purchase Agreement.  If the Stalking Horse Bidder becomes entitled to the Break-Up Fee in accordance with the Asset Purchase Agreement, then the Stalking Horse Bidder shall be granted, pursuant to sections 105, 503, and 507 of the Bankruptcy Code, an allowed superpriority administrative claim in an amount equal to the Break-Up Fee and the Expense Reimbursement, and the Break-Up Fee and Expense Reimbursement shall be payable at closing from the proceeds from the sale of the Debtors' assets.  For the avoidance of doubt, the superpriority administrative claim granted the Stalking Horse Bidder pursuant to this Order shall be subordinate only to the superpriority claims granted to lenders of the Debtors' pursuant to Section 364 of the Bankruptcy Code.

20.    No person or entity other than the Stalking Horse Bidder shall be entitled to any expense reimbursement, break-up, "topping," termination, or other similar fee or payment.

21.    The Debtors and their advisors shall reasonably consult regularly with the Secured Lenders and their advisors (unless such person has submitted a bid that is still open) on all material aspects of the sale process described in these Bid Procedures and all material decisions and documents contemplated herein, including, without limitation, all instances in which such parties have express consultation rights in these Bid Procedures.

22.    Notwithstanding any applicability of Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

23.    This Court shall retain jurisdiction to enforce and interpret the provisions of this Order.

**END OF ORDER**

*2134753v5*

## <u>EXHIBIT A</u>

## ASSET PURCHASE AGREEMENT

[*TO BE FILED PRIOR TO HEARING ON SALE PROCEDURES ORDER*]

**<u>EXHIBIT B</u>**

**SALE NOTICE**

## <u>EXHIBIT C</u>

**NOTICE OF ASSUMPTION, ASSIGNMENT AND SALE**

*2134753*