IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| **In re:** * | |
| **GOURMET EXPRESS ACQUISITION FUND, LLC,** *et al.*, | * Case Nos: 15-13670(NVA), 15-13673(NVA), and 15-13674(NVA) |
| Debtors. | * Chapter 11 |
| | * Jointly Administered under Case No: 15-13670 (NVA) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEBTORS' MOTION FOR EXPEDITED HEARING ON DEBTORS' SALE MOTION AS RELATES TO APPROVAL OF BID PROCEDURES, BREAK-UP FEE, RELATED FORM AND MANNER OF NOTICES FOR SALE PROCESS AND SCHEDULING OF SALE HEARING**

Gourmet Express Acquisition Fund, LLC ("GEAF"), Gourmet Express Holdings, LLC ("Holdings") and Gourmet Express, LLC ("Gourmet Express," and together with GEAF and Holdings, the "Debtors"), the debtors and debtors-in-possession in the above-captioned cases, by counsel, file their Motion for an expedited hearing on their Sale Motion (defined below) [Docket No. 141] as relates to entry of an Order: (I) establishing bidding procedures for sale of assets free and clear of liens and encumbrances, (II) approving break-up fee, (III) establishing cure claim procedures, (IV) establishing sale hearing date and objection and other deadlines related thereto, and (V) providing related relief (the "Motion"), and respectfully represent in support thereof:

**Jurisdiction**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and the Motion in this district is proper, pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief sought herein is based upon Section 105(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et seq.</u> (the "<u>Bankruptcy Code</u>") and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

### The Chapter 11 Cases

3. On March 16, 2015 (the "<u>Petition Date</u>"), the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors intend to continue in the possession of their property and the management of their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. On March 26, 2015, the United States Trustee appointed an official committee of unsecured creditors (the "<u>Creditors' Committee</u>") in these cases.

### Background of Debtors and Their Business Operations

5. Gourmet Express is the manufacturer of frozen skillet meals sold under the retail name "Gourmet Dining." It wholesales its frozen skillet meals to numerous retailers throughout the United States, including WalMart, Costco and Aldi's. Gourmet Express manufactures its products at a 332,465 square foot facility located in Greenville, Kentucky. A portion of Gourmet Express's back office operations are located in McAllen, Texas.

6. Gourmet Express was formed under the laws of Texas on December 1, 1997, and previously filed bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas in 2007. GEAF was incorporated in Maryland on September 28, 2007 for the purpose of purchasing the equity interests of Gourmet Express out of the prior bankruptcy. Subsequent to GEAF's acquisition of Gourmet Express, GEAF created Holdings, which was incorporated in Maryland on May 11, 2010. Holdings was created for the singular purpose of holding a trademark for a separate line of specialized skillet

meals, which was discontinued in 2014. GEAF is the holding company that owns the equity interests of both Gourmet Express and Holdings.

7.     Gourmet Express's revenues are derived solely from the sale of their frozen skillet meals. The Company has one full time sales manager who manages a food broker network of twenty-four (24) food brokers. The food brokers have direct contact with the customers and market the Company's product for sale to the respective customer buyers. As of the Petition Date, Gourmet Express had ninety-eight (98) employees on both a part-time and full-time basis.[1]

### Existing Indebtedness and Events Leading to Bankruptcy Filing

8.     Gourmet Express has been suffering from a significant reduction in sales coupled with high overhead and significant non-operational costs. During 2014, Gourmet Express's revenues declined significantly, from approximately $61,000,000 in calendar year 2013 to $49,000,000 in 2014. A primary reason for the decrease in revenue is the reduction in sales to Walmart, Wakefern and Aldi's. Further reductions in sales to these customers are forecasted for 2015.

9.     In addition to slumping sales, Gourmet Express's rent at its Kentucky facility is well above market for the area, and the facility has significantly more square footage than needed. Continuing operations at this location is not sustainable at the current rent level. The combination of high overhead costs and not generating sufficient gross profits to pay such high overhead costs has caused significant cash flow problems.

10.    Non-operational obligations are also causing a significant drain on Gourmet Express's cash flow, including settlements and a judgment from various lawsuits. These settlements and judgment not only have a negative impact on Gourmet Express's cash flow and

---

[1] Nine (9) of the employees are salaried, and the remaining eighty-nine (89) are hourly.

balance sheet, they have significantly hurt Gourmet Express's ability to seek the proper level of financing necessary to sustain operations.

11. Gourmet Express currently funds its operations through a lending facility with Siena Lending Group, LLC ("Siena"). Siena controls all accounts receivable of Gourmet Express's operations, and lends to fund payroll and operation costs based on receivables and the funding needs of Gourmet Express. Gourmet Express is currently burdened by significant debt of over $37,000,000, including prepetition secured debt to Siena in the approximate amount of $1,400,000, and has incurred net losses over the last four years cumulating to over $23,000,000. Secured debt to other secured creditors as of the Petition Date is in excess of $18,000,000. The Debtors estimate their current assets at a value of between approximately $3,500,000 and $8,500,000.

12. As a result of the deteriorating financial and operating conditions prior to the Petition Date, the Debtors engaged Traxi, LLC ("Traxi") to assess and advise on restructuring options. The Debtors ultimately determined that a sale of the Gourmet Express business as a going concern would yield the best result and be in the best interests of creditors and other parties-in-interest. The Debtors have also engaged Traxi to market and sell the assets of Gourmet Express. The Debtors have determined that a structured sale process with defined milestones under the protections of Chapter 11 would be the quickest and most efficient way to effectuate a sale of substantially all of Gourmet Express' assets in a manner that will maximize proceeds to benefit creditors.

### Relief Requested

13. Simultaneously with the filing of this Motion, the Debtors filed their Motion For Orders: (I) Approving Sale of Substantially all of the Debtors' Assets to Genesis Merchant

Partners, LP and Genesis Merchant Partners II, LP, or Such Other Winning Bidder, Free and Clear of all Liens, Claims and Encumbrances; (II) Approving Bidding Procedures and Break-Up Fee in Connection With Such Sale; (III) Approving Assumption, Assignment and Sale of Certain Executory Contracts and Related Procedures; (IV) Scheduling Hearings and Prescribing Form and Manner of Notice; and (V) Granting Related Relief (the "Sale Motion").

14. In addition to seeking ultimate approval of the sale of substantially all of the Debtors' assets, the Sale Motion also seeks Court approval of proposed procedures and other matters related thereto. Specifically, the Debtors seek an order: (I) establishing bidding procedures for sale of assets free and clear of liens and encumbrances, (II) approving break-up fee, (III) establishing cure claim procedures, (IV) establishing sale hearing date and objection and other deadlines related thereto, and (V) providing related relief (collectively, the "Bid Procedures").

15. As set forth in the Sale Motion, the Debtors are seeking authority of the Court for the sale of substantially all of their assets. The proposed sale of assets needs to be completed on an expedited basis (but with the full twenty-one day notice for such a sale required in the Federal Rules of Bankruptcy Procedure). However, due to certain time constraints related to the Debtors' post-petition financing, the Debtors need an expedited hearing to approve the Bid Procedures so the sale can be completed by June 5, 2015.

16. Prior to a hearing to consider the proposed sale, the Debtors intend to solicit competing bids for the sale of Debtors' assets. In order to start the bidding process, the Debtors request that the Court conduct a hearing on the Sale Motion as to the Bid Procedures only on an expedited basis. This would allow, *inter alia,* the Debtors, once the proposed Bid Procedures are approved by the Court, to maximize the period for any competing bidders to submit bids for the

Debtors' assets prior to a hearing on the sale of the assets. Bankruptcy Rule 9006(c) allows the reduction of notice with respect to the Sale Motion as it relates to the Bid Procedures upon cause shown. The Debtors submit that the tight timeframe in which the closing on the sale of the Debtors' assets must occur (June 5, 2015) is sufficient cause to schedule a hearing on the Bid Procedures on shortened notice in order to allow the maximum amount of time for marketing of the Debtors' assets.

17. Accordingly, the Debtors respectfully request that consideration of the Bid Procedures be set in and considered at a hearing to be scheduled by the Court for the earliest date the Court has available. The Debtors also request that the Court establish the objection deadline with respect to the Sale Motion as it relates to the Bid Procedures to be set for the date that is two (2) business days prior to the hearing.

WHEREFORE, the Debtors respectfully request that this Court schedule an expedited hearing on the Sale Motion as relates to the Bid Procedures and provide any other relief which is just and equitable.

Dated: April 10, 2015    WHITEFORD TAYLOR & PRESTON, LLP

/s/ *Dennis J. Shaffer*
Paul M. Nussbaum (Bar No. 04394)
John F. Carlton (Bar No. 06591)
Dennis J. Shaffer (Bar No. 25680)
Seven Saint Paul Street, 15th Floor
Baltimore, Maryland 21202-1636
(410) 347-8700
pnussbaum@wtplaw.com
jcarlton@wtplaw.com
dshaffer@wtplaw.com

*Counsel for the Debtors*

-7-

## CERTIFICATE OF SERVICE

I certify that on the 10th day of April, 2015, I caused to be served, through the Debtors' noticing agent, the foregoing upon those parties on the attached service list (i) by overnight mail to all parties on the list, and (ii) by facsimile and electronic mail to those indicated therein.

/s/ *Dennis J. Shaffer*
Dennis J. Shaffer

*2134992*